[No. 345. Decided February 9, 1892.]

J. H. FOX, T. J. McGOVERN, LOTT FARR, T. F. LEADER & CO., AND LAUMEISTER & TOD, *Respondents*, v. F. NACHTSHEIM AND J. KLEE, *Appellants*.

APPEAL—JURISDICTIONAL AMOUNT—VOID JUDGMENT.

An action to foreclose a mechanic's lien being an equitable proceeding, a judgment therein is appealable, although the original amount in controversy does not exceed the sum of two hundred dollars.

The supreme court will entertain an appeal from a judgment rendered on Sunday, although such judgment is a nullity, in order that the legality of the judgment may be judicially determined. (SCOTT, J., dissents.)

*Appeal from Superior Court, Pierce County.*

Action by John H. Fox, T. J. McGovern and Lott Farr, partners doing business as Fox & Co., against F. Nachtsheim and J. Klee, partners, and T. F. Leader & Co. and

Laumeister & Tod, to foreclose a mechanic's lien on the premises of Nachtsheim & Klee for repairs made thereon at the instance of the other defendants, who were lessees thereof. Judgment for plaintiffs, and defendants Nachtsheim & Klee appeal.

*J. P. Cass,* and *Doolittle, Pritchard, Stevens & Grosscup,* for appellants.

*Garvey & Smith,* for respondents Fox & Co.; *Thomas Carroll,* for respondents Laumeister & Tod, and *J. S. Whitehouse,* for respondents Leader & Co.

The opinion of the court was delivered by

DUNBAR, J.—This appeal is taken from the judgment rendered in the superior court of Pierce county. Several errors are alleged, among others, that the judgment of the court below is erroneous and void, for the reason that the same was rendered on Sunday, a non-judicial day. Respondents move to dismiss the appeal for the following reasons: (1) That the proceeding is a civil action at law for the recovery of money, and the original amount in controversy does not exceed the sum of two hundred dollars, and does not involve the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute; (2) that it is not an appeal from a final order, or the final decision of any superior court, it appearing from the record that the alleged judgment or order appealed from is void and invalid, and that the case is still pending in the superior court of Pierce county.

So far as the first ground of dismissal is concerned, this court has already held in *Washington Iron Works Co. v. Jensen, ante,* p. 584, that an action to foreclose a mechanic's lien is an equitable proceeding.

In support of the second ground of dismissal, it is urged that, as under the law the court has no jurisdiction to enter

judgment on Sunday, the judgment is absolutely void—
that there is nothing to appeal from; that the superior
court having no jurisdiction to act, this court cannot take
notice of such void act, even for the purpose of reversing
it, and some authorities are cited by respondent which
sustain this view. And, indeed, at first blush it would
seem to harmonize with the general principles of the law,
that a void judgment was no judgment at all, and could,
therefore, have no effect, and that, therefore, the time of
the appellate courts could not be taken up in considering a
harmless judgment. But while the plausibility of this
theory cannot be questioned, as a practical fact, the illegal
judgment may not prove to be harmless, but may prevent
the full enjoyment of rights which the owner has in prop-
erty which is seemingly affected by the judgment. One
of the rights which the owner of property has is a right to
sell it at its full value; and anything that tends to prevent
such a sale is a deprivation of a right; and certainly a
judgment which on its face is a lien on property will affect
its sale. There is always a presumption in favor of the
validity of a judgment. If this presumption must be rec-
ognized by the courts, how much more strongly will it
attach itself to the minds of citizens at large who are in-
capable of understanding the nice distinctions of law.
There is a universal and oft expressed disinclination on the
part of trading people to "buy a lawsuit;" experience has
taught them that they are often enough forced into expensive
litigation to defend titles against which no clouds were visi-
ble when they bought, and they will be very slow to buy
property which appears to be subject to a lien imposed
upon it by the formal judgment of a court of competent
jurisdiction, regular upon its face, even though assured that
such a judgment is void. If they bought at all under such
circumstances, it would be at greatly reduced prices, and on
the theory of chances. Fine spun theories should not refute

practical example, and a person's right to full, free and untrammeled enjoyment of his property should not be hampered or menaced by a slavish adherence to impracticable theories. It is upon this principle that suits are entertained by courts of equity to set aside fraudulent deeds. Under the statute of frauds and the statute of Elizabeth, which are a part of our common law, a deed made for the purpose of defrauding creditors is declared to be absolutely void. The strongest possible language is employed to describe its invalidity, and yet it is the universal practice of courts of equity to entertain suits to cancel such deeds for the purpose of removing clouds from the title. While the deed in one sense is illegal and of no effect, yet it does have sufficient vitality to perniciously affect the rights of the owner, and the courts will, therefore, take jurisdiction and notice of it sufficiently to cancel and destroy it, so that a purchaser may not have to incur the risk of acting upon a mistaken opinion of the legality of the title, or the invalidity of the alleged fraudulent deed. So, in this case, while the defendants would doubtless have a right to treat this judgment as a nullity, yet if they did so it would be at their peril, and there seems to be no good reason why they should be deprived of the right to have the matter judicially determined on appeal. It seems to be the juster and more sensible rule, and is indorsed by the great weight of authority. It is true that in *Wicks v. Ludwig*, 9 Cal. 173, the court decided squarely that a judgment entered in vacation, where the constitution of California only conferred jurisdiction on the district courts to try cases in term time, was illegal and void, and that no appeal could be taken from such judgment. But the later California cases sustain exactly the reverse doctrine. Thus, in *Livermore v. Campbell*, 52 Cal. 75, the court says:

"It has been repeatedly held by this court that an appeal lies from a void judgment, and it follows that an order

setting aside a judgment in form on the ground that it is in fact invalid, is also appealable."

In *City of Parsons v. Lindsay*, 41 Kan. 336; 13 Am. St. Rep. 290 (21 Pac. Rep. 227), it was held that Sunday was a nonjudicial day, and that the judgment rendered on that day was void, and that such judgment would be reversed on appeal. To the same effect is *Arthur v. Mosby*, 2 Bibb, 589; *Chapman v. State*, 5 Blackf. 111; *Peters v. Rhine*, 10 Tex. 215. In fact the right of appeal in those cases seems to have been conceded. This seems also to be the rule in the supreme court of the United States. In *United States v. Nourse*, 6 Pet. 470, the court says:

"If it clearly appear that the circuit court had no jurisdiction in this case, still this court may take jurisdiction, so far as it regards the proceedings had before the circuit court; but those proceedings, being wholly unauthorized, must be annulled or reversed."

See also *Lynch v. Divan, Ex'r*, 66 Wis. 490 (29 N. W. Rep. 213; *Commonwealth v. O'Neal*, 6 Gray, 343; Hayne on New Trials, p. 566, § 187. In *Moore v. Wait*, 1 Binn. 219, it was held that an appeal would lie from a justice's court in a case where the justice had no jurisdiction. This court has also held in *Stewart v. Lohr*, 1 Wash. 341; 22 Am. St. Rep. 150 (25 Pac. Rep. 457), that it could take jurisdiction to reverse a void judgment, though in that case the appeal was dismissed. We think, however, the more consistent practice would be to entertain the appeal.

The motion to dismiss will therefore be denied, and as it is conceded by both parties that the judgment is illegal, having been rendered on Sunday, which both under the common law and under the statute is *dies non juridicus*, the judgment must be reversed and the case remanded to the superior court with instructions to proceed in accordance with this opinion.

Anders, C. J., concurs.

STILES, J.—I concur in the disposition of this case, though with but little alacrity. The record brought here shows a certain judgment to have been entered and the date of the entry to have been on a certain Sunday; but I am morally certain that no judgment was ever entered by the superior court on Sunday, and that the date is simply a mistake of the clerk or counsel, which should have been corrected by application to the court below, without the cost and delay of an appeal. It is unfair to the superior courts to pass them by in such cases; and yet when both sides, as it were, stand mute and admit the apparent error, this court can do nothing but reverse.

HOYT, J.—I concur in the vacation of the judgment, but not upon the grounds stated in the opinion.

HOYT, J. (*dissenting*).—I think the appeal should have been dismissed. The remedy should have been sought in *mandamus* to compel the court to proceed to judgment, treating the purported judgment rendered on Sunday as a nullity; or the record should have been brought here by *certiorari* so that the purported judgment might have been set aside; a general appeal is not the appropriate remedy in such a case under our peculiar practice of having a trial *de novo* in all appeals of equitable causes. Under such an appeal the statute requires all the testimony to be brought up. See § 1423, Code of Procedure. We have repeatedly so held, and there are no exceptions to this practice; yet here, where the judgment is final if anything, when the testimony comes we will not look at it, but set aside a void judgment, and remand the cause for trial on the ground that there has been no disposition of it in the court below. This is an inconsistency that should be avoided, and it is easily avoided by invoking the aid of the useful writ of *certiorari*, which would bring up the record with-

44—3 WASH.

out the testimony. There are not many instances where it would be appropriate under our equity practice. It could only be available to correct some error like the one complained of here, which the testimony could not possibly cure. It is a correct practice to allow a party to bring up a void judgment for the purpose of having it set aside, but it does not seem right to allow it to be brought up by an appeal of the whole cause, which of necessity requires the bringing up of the testimony, and in our holding such judgment sufficient to permit of such an appeal, but insufficient to permit us to examine the testimony and try the cause anew when it is here. If such an appeal will lie, the cause should proceed here to a trial upon the evidence. The more appropriate remedy probably would be to apply for a *mandamus* to compel the lower court to set aside the void judgment, and to proceed with the cause. In *State, ex rel. Rohde, v. Sachs*, 2 Wash. 373 (26 Pac. Rep. 865), we issued a *mandamus* directing the superior judge to set aside a void order, it also being one from which an appeal could have been taken. I think in this case either *mandamus* or *certiorari* would lie, but not the usual appeal. Our constitution gives us the right to issue these writs in aid of our appellate and revisory jurisdiction, and here was a most appropriate place to invoke the aid of one of them, so that the cause might have been shaped for a final disposition in the superior court, and put in a condition allowing of an appeal. It would have been much more inexpensive, less complicated with other immaterial matters, and directly to the point.