[Nos. 1438-3; 1475-3.    Division Three.    April 7, 1976.]

Louis P. Esmieu, et al, *Respondents*, v. Elissa Esmieu Schrag, et al, *Appellants*, Jack Hsieh, et al, *Respondents*.

Robert G. *Austin*, Malcolm L. *Edwards*, and *Edwards & Wetherall*, for appellants.

*Leon C. Misterek*, *Charles Snyder*, and *John Schultz*, for respondents.

McInturff, C.J.—Defendants, Elissa Esmieu Schrag and Henry Esmieu, Jr., appeal from (1) a denial of a motion to vacate a pretrial order and an order approving an exchange of property and (2) an order directing defendants to execute certain deeds for the property exchanged.

The appeal involves approximately 15,500 acres of dry farm and pasture land originally owned by the community

of Henry and Gabrielle Esmieu. However, in December 1957, they conveyed an undivided one-half interest in the land in trust to their sons, Louis and Stephen Esmieu for the benefit of certain persons, including Elissa and Henry, Jr. In January 1959, Henry died and by a testamentary trust, conveyed an additional undivided one-fourth interest in the property to Louis and Stephen. Gabrielle conveyed certain undivided interests in the property to her children, Stephen, Louis, Elissa, and Henry, Jr. Additionally, she conveyed certain undivided interests to three of her grandchildren. The balance of Gabrielle's interest was transferred in trust to Louis and Stephen.[1]

The various provisions of the testamentary and inter vivos trusts gave Stephen and Louis the power to borrow upon the security of the trust to lease or rent the trust property and to manage and control all the money and property, real and personal. The trusts were to terminate upon the death of the last Esmieu child and the corpus was to be distributed to the surviving grandchildren. The trusts also provided that the farm and pasture land held could not be sold during the term of the trusts.

In April 1974, the trustees, in order to generate more income for the trust beneficiaries by diversifying the trust, filed a complaint asking the court to interpret the trust and to approve two agreements the trustees had executed with respect to the farm and pasture land, but were subject to court approval. The two agreements were: (1) an offer for the exchange of an apartment complex for a portion of the trust land, and (2) a lease of, and option to exchange other real estate for the remaining acreage. Briefly, the exchange offer provided that Jack and Dorothy Hsieh would acquire the Villa Capri Apartments in Kennewick, Washington, and exchange it for 9,000 acres of the trust property. The lease and option covered the balance of the property and provided that the Hsiehs could lease the property until December 1996. During the term of the lease, but before specified

---

[1]These conveyances are not essential to the issues presented; however, they do indicate the various interests of the parties.

dates, the Hsiehs had the right to exchange real estate of equivalent value for various parcels of the remaining property.

A guardian ad litem was appointed to represent the trust beneficiaries not represented by personal attorneys. Defendants are represented by their personal attorneys.

A pretrial conference was held May 24 and a pretrial order was entered June 27. The order "approved" the two agreements subject to later court approval of the specific property to be exchanged. The trust beneficiaries were given 20 days to file answers to the complaint. All of the parties were directed to cooperate in efforts to locate suitable real estate for an exchange. The trustees were to file a report prior to September 15 indicating the status of all important matters related to the performance of the pretrial order including but not limited to offers of real estate in exchange for the trust land. The trustees were required to give the trust beneficiaries 10 days notice of any hearing on recommendations for acceptance or rejection of any specific property for the exchange.

On Monday, September 16, 1974, the trustees filed their report recommending the Villa Capri Apartments exchange and requested a date for a hearing to consider their recommendation. On the same date counsel for trustees, without giving the requisite notice to the defendants or their counsel, persuaded the court to hear testimony by the trustees, Mr. Hsieh, and the trustees' financial advisor, ostensibly for the purpose of showing the necessity for a hearing on the report in the near future. Mr. Hsieh testified as to the need for the speedy resolution of the exchange question because of the complexities involved in irrigating the trust land. The financial advisor characterized the Villa Capri exchange as the best opportunity. He also stated that he had examined the defendants' exchange proposals but that they were not adequate to satisfy the needs of the trust.

On September 25, defendants answered the complaint objecting to the Villa Capri exchange on the grounds that: (1) it would not bring sufficient income; and (2) a trustee,

the financial advisor, and the trustees' attorney had financial interests in the Villa Capri.

On September 30, a hearing was held where the counsel for the various parties presented arguments to the court concerning the recommendation of the trustees; however, no evidence was taken.

On October 10, the court, apparently having forgotten that (1) the testimony taken on September 16 was ex parte and (2) there was no evidence taken on September 30, informed the parties by letter:

> The Court believes it is imperative to obtain water for the land held in the Esmieu trust. This compelling need was probably the most important factor leading all interested parties to agree that the trust should be diversified.
>
> At the time of the entry of the pretrial order, it was apparent to the Court it would require the cooperation of all parties and the expenditure of considerable funds to accomplish the purpose of the trustees. Due to the many complications of putting a package of this magnitude together, it appears to me it would be unfair to permit one or two objectors at this point to veto the proposal of the trustees, particularly where the objectors have offered no reasonable alternatives.
>
> From the evidence presented in court, I am satisfied the trust will be benefited by the exchange proposed by the trustees. You may draw your order accordingly.

An order approving the Villa Capri exchange was presented on October 28, 1974. At that time, defendants' counsel argued that the findings and conclusions contained in the proposed order were inappropriate since no evidence had been taken on the trustees' report. The court continued the matter for a day and a half to allow the defendants' counsel to submit evidence via an offer of proof.

On October 30, defendants made an offer of proof that: (1) the trustees' counsel and the Hsiehs had a one-fourth interest in the corporation which was the general partner of the Villa Capri limited partnership; (2) the financial advisor, the trustees' attorney, Mr. Hsieh and a trustee, Stephen Esmieu, owned 47 percent of the Villa Capri limited partnership; (3) three grandchildren opposed the Villa

Capri exchange; (4) defendants opposed the exchange; and (5) an investment and tax consultant would not recommend the proposed exchange. After the offer of proof, the proposed findings were again discussed. Defendants' counsel argued that the proposed findings were not supported by any evidence in that the only evidence before the court was in the form of the defendants' offer of proof. At the conclusion of the hearing, the court accepted defendants' offer of proof as showing the interests the various individuals had in the Villa Capri but rejected the rest. The court stated that the Villa Capri exchange was a good investment. In order to compute the time period for the filing of a motion for reconsideration, defendants' counsel asked the court on what day it reached its decision. The court replied: "[October 10] was when I made up my mind. As far as I was concerned, that's when I made my decision." Defendants' oral motion for reconsideration was denied.

On November 18, the trial court entered findings of fact, conclusions of law, and order approving the exchange of property. The guardian ad litem was present at this hearing but the attorney for the defendants was not; nevertheless, counsel for the trustees offered as evidence three exhibits to support the findings. The exhibits were admitted.

On January 6, 1975, trustees filed a second report which, among other things, defined the amounts to be paid to the parties who owned undivided interests in the property to be exchanged which interests were outside the trust. The report also defined the source for the payment of that money.

On January 20, defendants filed a motion to vacate the November 18 and the pretrial orders. Defendants' supporting affidavits raised questions of whether the trustees' attorney and the financial advisor had breached their fiduciary obligations to the trustees and the beneficiaries by failing to disclose the opportunity to lease the land rather than exchange it. The court deferred taking any action on the second report until the motion was determined.

On February 3, a hearing was held on the motion to

vacate. On that date, Jack and Dorothy Hsieh, Pacific Rim International and Donald and Byrdeen Worley intervened in the action. The motion was denied.

On March 11, the court approved the second report and directed the defendants to execute quitclaim deeds for their undivided interests in the property to be exchanged.

Defendants appealed the denial of their motion to vacate and the approval of the second report. The two appeals were consolidated. Prior to our consideration of the appeals on their merits, the defendants, pursuant to CAROA 53(b), moved for dismissal of their appeal and vacation of the orders appealed. Defendants contended that the appealed orders were void because their viability rested almost exclusively upon the ex parte evidence taken September 16, and the exhibits admitted November 18. This court continued its decision on the motion to dismiss until its consideration of the appeals on their merits.

Article 1, section 3 of the Washington State Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The procedural elements of this constitutional guaranty are notice and the opportunity to be heard and defend before a competent tribunal in an orderly proceeding adapted to the nature of the case.[2] A judgment entered in a proceeding which does not comport with procedural due process is void.[3] Because of plaintiff's failure to notify the defendants that testimonial and documentary evidence in support of the proposed exchange would be presented to the court and the court's reliance on such evidence for its order approving the exchange, we must declare the November 18 order void.

---

[2] *In re Petrie*, 40 Wn.2d 809, 246 P.2d 465 (1952); *Scott v. McNeal*, 154 U.S. 34, 38 L. Ed. 896, 14 S. Ct. 1108 (1894); *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 65, 85 S. Ct. 1187, 1191 (1965); and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 872, 70 S. Ct. 652 (1950).

[3] *Sheldon v. Sheldon*, 47 Wn.2d 699, 702, 289 P.2d 335 (1955); *Scott v. McNeal*, 154 U.S. 34, 38 L. Ed. 896, 14 S. Ct. 1108 (1894); *English v. Long Beach*, 35 Cal. 2d 155, 217 P.2d 22, 18 A.L.R.2d 547 (1950).

■ Although the due process deficiency of the November 18 order is raised by the defendants for the first time by their motion,[4] it is properly before this court.[5] The abridgment of a constitutional right need not be raised at trial in order to secure appellate review.[6]

Although an appellate court has no greater jurisdiction to review the merits of a case than that had by the trial court which entered the appealed order,[7] the court has procedural jurisdiction to entertain the appeal[8] and vacate the void order.[9] In light of the procedural deficiency leading up to the November 18 order, and our determination that it is void, the remaining issues on appeal need not be considered.

The appellants' motion to dismiss is granted; the November 18 order and all subsequent orders, since their viability rests on the former, are vacated; and the case is remanded to the Superior Court.

MUNSON, J., and EVANS, J. Pro Tem., concur.

Petition for rehearing denied June 1, 1976.

Review granted by Supreme Court August 31, 1976.

---

[4]Counsel for the defendants argued that they were unaware of the fact that evidence was taken on September 16 until the statement of facts was transcribed.

[5]*Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970).

[6]*State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968); *State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

[7]*Fortier v. Fortier*, 23 Wn.2d 748, 162 P.2d 438 (1945).

[8]*Fortier v. Fortier*, 23 Wn.2d 748, 162 P.2d 438 (1945); *Sheppard v. Guisler*, 10 Wash. 41, 38 P.2d 759 (1894); *Fox v. Nachtsheim*, 3 Wash. 684, 29 P. 140 (1892).

[9]*Stewart v. Lohr*, 1 Wash. 341, 25 P. 457 (1890).